|                              |   |                    |
|------------------------------|---|--------------------|
| TERRENCE WATSON,             | ) |                    |
|                              | ) |                    |
|     Petitioner, | ) | **MEMORANDUM AND** |
| v.                           | ) | **RECOMMENDATION** |
|                              | ) |                    |
| UNITED STATES OF AMERICA,    | ) |                    |
|                              | ) |                    |
|     Respondent. | ) |                    |

This matter comes before the court on the motion of Terrence Watson ("Petitioner") under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [DE-87] and the government's motion to dismiss [DE-92], to which Petitioner filed a response in opposition [DE-96]. The time for responding to the pending motions has expired, and the undersigned held an evidentiary hearing to further develop the record; accordingly, the motions are ripe for review. These motions were referred to the undersigned and are considered here for recommendation to the district court. 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1). For the reasons stated below, it is recommended that Petitioner's motion be denied, the government's motion be allowed, and Petitioner's claims be dismissed.

## I. BACKGROUND

On October 25, 2011, Petitioner was charged in a one-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. [DE-1]. On January 9, 2012, Petitioner pleaded not guilty to the charge at arraignment. [DE-19]. On January 12, 2012, the court conducted an administrative telephone conference with counsel for the parties and set the

case for jury trial beginning April 6, 2012. Jan. 12, 2012 Minute Entry; [DE-20]. On March 28, 2012, Petitioner was charged in a superseding two-count indictment with conspiracy to distribute and possess 280 grams or more of cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. § 840(a)(1), all in violation of 21 U.S.C. § 846; and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. [DE-34]. On April 5, 2012, the court held Petitioner's initial appearance and arraignment as to the drug conspiracy count of the superseding indictment, to which Petitioner pleaded not guilty. [DE-41]. The defense made an oral motion to dismiss the superseding indictment on the grounds that it was a vindictive prosecution, which was denied. *Id.*; Apr. 5, 2012 Oral Order. The court provided Petitioner the opportunity for a continuance based on the timing of the superceding indictment and, both through counsel and by his own statement, Petitioner affirmed that he did not want a continuance and was prepared to proceed to trial. Arraignment & Pretrial Tr. [DE-77] at 12-14. After a three-day trial, at which three witnesses (Tony Blanchard ("Blanchard"), Deon Boston ("Boston"), and Lawrence Sharpe ("Sharpe")) testified about crack cocaine transactions involving Petitioner, the jury returned a verdict of guilty as to the drug conspiracy count and not guilty as to the gun count. [DE-44, -45, -47, -48]. On July 19, 2012, Petitioner was sentenced to 222 months' imprisonment and five years of supervised release and judgment was entered. [DE-62, -64]. On July 24, 2012, Petitioner filed a notice of appeal [DE-66], and on August 6, 2013, the Fourth Circuit Court of Appeals affirmed the conviction, *United States v. Watson*, 537 F. App'x 213 (4th Cir. Aug. 6, 2013) (per curiam) (unpublished). On December 2, 2013, the Supreme Court denied a petition for writ of certiorari, *Watson v. United States*, 134 S. Ct. 719 (2013).

On November 26, 2014, Petitioner, proceeding *pro se*, timely filed the instant § 2255 motion,

asserting that his trial counsel provided ineffective assistance by failing to investigate and call two witnesses, Shante Fleming ("Fleming") and Larodrick Horne ("Horne"), to (1) defend the drug conspiracy charge at trial, and (2) challenge the drug weight at sentencing. [DE-87]. On December 29, 2015, counsel for Petitioner, who later entered a notice of appearance [DE-94, -95], filed a memorandum in support of Petitioner's motion [DE-91]. On January 6, 2015, the government filed a motion to dismiss [DE-92], to which Petitioner through counsel responded in opposition [DE-96]. On March 15, 2016, Petitioner's sentence was reduced to 178 months' imprisonment pursuant to the Drug Quantity Table amendment, 18 U.S.C. § 3582(c)(2). [DE-100]. On August 8, 2016, the undersigned held an evidentiary hearing to further develop the record regarding Petitioner's alleged ineffective assistance of counsel claims. [DE-109].

## II. STANDARD OF REVIEW

### A.    28 U.S.C. § 2255

After conviction and exhaustion or waiver of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Section 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999). Where a petition seeks relief from a

3

nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *Id.* (internal quotation marks and citations omitted). "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, No. 7:05-CR-00097-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (unpublished) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

**B.     Rule 12(b)(6)**

The court may consider a motion to dismiss challenging the legal sufficiency of a § 2255 motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) (unpublished); Rule 12, Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by

4

factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citation omitted). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (internal quotation marks omitted)). A court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Furthermore, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

### III. DISCUSSION

To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As to the prejudice component, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

5

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *See Strickland*, 466 U.S. at 697 (explaining "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "to address both components of the inquiry if the defendant makes an insufficient showing on one").

Petitioner asserts that trial counsel provided ineffective assistance by failing to investigate and call Fleming and Horne as witnesses to (1) defend the drug conspiracy charge at trial, and (2) challenge the drug weight at sentencing. Pet'r's Mot. [DE-87] at 4-5; Pet'r's Mem. [DE-91] at 9-17; Pet'r's Resp. [DE-96] at 1-2. Petitioner submitted a document entitled "Affidavit of Terence Watson" in support of his motion, which is not notarized and appears to be an unsworn declaration, pursuant to 28 U.S.C. § 1746. [DE-87-1]. Petitioner asserts in his declaration the following relevant facts: during Petitioner's case he learned that Sharpe had provided a statement to law enforcement about him in December 2011, but did not mention Fleming or Horne; at Sharpe's sentencing in February 2012, Sharpe spoke with the prosecutor on his case, who also prosecuted Petitioner's case, and offered to testify that Petitioner was dealing crack cocaine; Sharpe was interviewed by law enforcement in March 2012 and indicated that Petitioner provided Fleming and Horne one ounce of crack cocaine per week for eight months, for a total of 32 ounces or approximately 900 grams; Petitioner told his counsel that Sharpe's statement was false, that Fleming and Horne would testify Petitioner never sold them crack cocaine, and that counsel should call Fleming and Horne to testify for Petitioner at trial; and at trial Sharpe changed his story and testified that he was getting an ounce

6

from Fleming and Horne twice a week, for a total of 64 ounces. *Id.* ¶¶ 2-4. Petitioner also submitted a document entitled "Affidavit of Shante Fleming," which is also not notarized and appears to be an unsworn declaration, pursuant to 28 U.S.C. § 1746. [DE-87-2]. In the declaration Fleming indicates that he "never brought [sic] drugs from Terence Watson and sold them to Lawrence Sharpe" and that if called to testify during Petitioner's trial or sentencing, Fleming would have "told the truth . . . stated in this affidavit." *Id.* Petitioner contends that reasonable counsel, upon learning in February or March 2012 that the government would seek to add a charge that he was involved in a crack cocaine conspiracy, would have investigated and prepared for trial, which would include interviewing Fleming and Horne and calling Fleming to testify. Pet'r's Mem. [DE-91] at 13.

Petitioner also contends that he was prejudiced by counsel's failures in this regard because more than a reasonable probability exists that the jury would have acquitted him of the crack cocaine conspiracy based on Fleming's testimony. *Id.* Petitioner explains that the jury had to rely on Sharpe's testimony to find that Petitioner conspired to distribute 280 grams or more of crack cocaine and that Fleming's testimony would have further undermined Sharpe's already inconsistent testimony. *Id.* at 13-14. Likewise, Petitioner contends that counsel was deficient in failing to call Fleming to testify at Petitioner's sentencing hearing. *Id.* at 16. Petitioner argues that Fleming's testimony would have left the court with only the jury's verdict that Petitioner was responsible for 280 grams, resulting in a base offense level of 32 rather than 34 and an advisory guideline range of 168 to 201 months rather than 210 to 262 months. *Id.* Thus, Petitioner concludes that he was prejudiced because had the court imposed a sentence 12 months from the bottom of the guideline range as it did at sentencing, he would have received 180 months rather than 222 months, or 48

months less than the current sentence. *Id.* at 16-17.

The government contends that Petitioner's ineffective assistance of counsel claims fail under both prongs of *Strickland*. Gov't's Mem. [DE-93] at 5-6. First, the government argues that counsel's decision of how to attack Sharpe's testimony was strategic and entitled to deference, pointing out that counsel elicited testimony favorable to Petitioner on cross-examination of Sharpe. *Id.* at 5. The government also contends that Petitioner has not demonstrated prejudice where the government offered the testimony of other witnesses to support the conspiracy claim. *Id.* Finally, the government contends that the claim for ineffective assistance at sentencing fails given the outcome of the trial—in other words, challenging Sharpe's testimony at sentencing would have been difficult given the jury's verdict beyond a reasonable doubt, which was based at least in part on Sharpe's testimony. *Id.* at 5. The government further argues that counsel was able to halve the drug weight attributed to Petitioner based on inconsistencies in Sharpe's testimony and that Petitioner has failed to show there is a reasonable probability that the court would have sustained any objection and lowered Petitioner's offense level. *Id.* at 5-6.

The decision as to whether to call a witness is strategic and, as such, is entitled to great deference. *See United States v. Chapman*, 593 F.3d 365, 367-68 (4th Cir. 2010) ("[W]hich witnesses to call is a classic tactical decision left to counsel, . . . and it remains a decision for counsel even when the client disagrees.") (citing *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991)); *McQueen v. United States*, No. 5:09-CR-00253-F-1, 2016 WL 413090, at *9 (E.D.N.C. Feb. 2, 2016) (unpublished) ("*Strickland's* presumption of reasonableness is particularly difficult to overcome in a claim of ineffectiveness for failing to call a witness, 'given that the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits

8

against perceived risks, and one to which we must afford enormous . . . deference.'") (quoting *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quotation and punctuation omitted)). Ultimately, if counsel "conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'" *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (citing *Strickland*, 466 U.S. at 688)).

Here, the evidence demonstrates that counsel made a strategic decision, in light of the law and facts of the case, to challenge Sharpe's credibility through cross-examination rather than calling Fleming or Horne to testify. At the evidentiary hearing, Petitioner testified that he knew Horne and Fleming, that Sharpe testified at trial that Horne and Fleming sold him drugs that they had bought from Petitioner, and that Petitioner gave Horne's and Fleming's names (but not contact information) to trial counsel, but counsel did not contact them and they did not testify at his trial. Hr'g Tr. [DE-111] at 4-6, 8. Petitioner further testified that trial counsel met with him the week of trial and reviewed the government's discovery, including statements from Sharpe related to the drug conspiracy charge, and that Petitioner told counsel that Sharpe's statement was not true and to contact Horne or Fleming who would corroborate Petitioner's contention. *Id.* at 7-8. However, Petitioner acknowledged that his meeting with trial counsel was close in time to the trial and that he declined the opportunity for a continuance. *Id.* at 9-10. Petitioner also indicated that he agreed trial counsel should use Sharpe's prior statements to attack his testimony and that he wanted to go forward with his trial because he was tired of sitting in jail for something he did not do. *Id.* at 10.

Fleming testified at the evidentiary hearing that he had known Petitioner for ten to twelve years from growing up in the same neighborhood, he knew Sharpe from the same area, and that Horne was his cousin and also lived in that area. *Id.* at 12. Fleming stated that Sharpe and Petitioner

9

did not know each other. *Id.* at 13. Fleming testified that he had not distributed drugs to Sharpe on Petitioner's behalf and that to his knowledge neither had Horne. *Id.* at 12-13. Fleming indicated he would have testified as such if subpoenaed, but that he was never contacted by Petitioner's trial counsel. *Id.* at 13.

Petitioner's trial counsel, Ryan Willis, testified at the evidentiary hearing. He has been a practicing attorney in criminal law since 2004, first as an assistant district attorney and then in private practice as a criminal defense attorney, with roughly one-third of his practice being in federal court. *Id.* at 16. Willis was appointed to represent Petitioner in this matter beginning in 2011. *Id.* at 17. Initially Petitioner was facing one charge of felon in possession of a firearm, but on or about March 13, 2012, the Assistant United States Attorney (the "AUSA") called Willis indicating she had information Petitioner was involved in a drug conspiracy, specifically a statement from alleged co-conspirator Boston implicating Petitioner, and that she would be inclined to let Petitioner plead guilty to the gun charge and not pursue the drug conspiracy. *Id.* at 17-18. However, as the trial approached and the government had yet to actually file any superceding indictment, Willis continued to prepare for trial focusing on the gun charge. *Id.* at 31. Willis received additional discovery on March 29 and April 2, including statements from Sharpe. *Id.* at 18. On April 2, 2012, four days prior to trial, the government filed a superceding indictment. *Id.* at 17.

Willis first met with Petitioner regarding the superceding indictment on April 3, and discussed the possibility for a continuance and potential arguments for dismissal of the superceding indictment based on its timing, but they decided to move forward with trial as scheduled. *Id.* at 19-21. With respect to strategy regarding the drug conspiracy count, Willis discussed with Petitioner his belief that there were enough contradictory statements between Boston and Sharpe (as to their

10

own statements and each others' statements), in addition to the fact that both had pleaded guilty in federal court to crimes for which they received lengthy sentences, to impeach their credibility and argue they had motivation to include Petitioner in the alleged drug conspiracy in hopes of receiving a sentence reduction. *Id.* at 20, 40-41. Willis was also concerned that a continuance may result in other individuals seeking Rule 35 motions coming forward with allegations against Petitioner. *Id.* at 36. Willis recalled that Petitioner was in agreement with moving forward to trial that week and did not recall Petitioner asking him to investigate Horne or Fleming. *Id.* at 21. Although Willis had retained investigators in other cases, both at the behest of his client and of his own accord, he did not do so in this case. *Id.* at 21, 33. However, Willis's handwritten notes from his April 3, 2012 meeting with Petitioner contain the notation "<u>Laroderick Horne</u>? <u>Shante Fleming</u>?" indicating the two were discussed, but reflect no details regarding what was discussed about these individuals and Willis did not recall why the names were underlined. *Id.* at 21-23 & 33, Gov't's Ex. 1. Furthermore, Willis indicated that Petitioner's desire to proceed to trial impacted the strategy and that had Petitioner focused on trying to reach out to Horne or Fleming to have them interviewed he would have asked for a continuance. *Id.* at 41-42.

Willis recalled that at the April 5 arraignment on the superseding indictment containing the drug conspiracy charge and pretrial hearing, the court denied Petitioner's motion to dismiss the superseding indictment, but was willing to grant a motion to continue the trial. *Id.* at 24-25. Willis discussed this option with Petitioner, but Petitioner wanted to move forward with the trial, consistent with his position when they had met on prior occasions. *Id.* at 25. At trial, Willis cross-examined Sharpe regarding discrepancies in his testimony, as well as prior inconsistent statements and the fact that he had an interest in cooperating with the government related to his federal sentence. *Id.* at 26.

11

Willis did not recall Petitioner speaking to him during the trial, or at any other time, about subpoenaing Fleming or Horne to testify. *Id.* Boston and Blanchard also testified against Petitioner regarding the drug conspiracy charge, and Petitioner was found guilty on the drug conspiracy count and not guilty on the gun count. *Id.* at 26-27, 35.

Prior to sentencing, Willis reviewed the draft presentence report ("PSR") with Petitioner and filed objections, including that the drug weight attributed to Petitioner based on Sharpe's inconsistent testimony prior to and during the trial should be 32 ounces rather than 64 ounces. *Id.* at 27-29, Gov't's Ex. 2. Willis considered asking for an even lower drug weight, but decided it would be futile given the jury's verdict. *Id.* at 29, 41. Willis did not recall Petitioner asking him to reach out to Fleming or Horne prior to sentencing. *Id.* Although he could not specifically recall, Willis indicated it was possible that given the 280 grams of drug weight found by the jury, if no additional drug weight was attributed to Petitioner it may have lowered the offense level. *Id.* at 38.

The evidence presented at the hearing demonstrates that trial counsel reviewed all of the relevant discovery with Petitioner, they discussed Sharpe's statements, as well as Horne and Fleming, Petitioner did not want to continue the trial despite the superseding indictment, and trial counsel made a considered strategic decision to impeach Sharpe through cross-examination. *Id.* Although Petitioner argued at the hearing that trial counsel was required to interview Horne and Fleming in order to make a reasonable investigation, the case law does not go so far. *See Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998) ("The Sixth Amendment . . . does not always compel counsel to undertake interviews and meetings with potential witnesses where counsel is familiar with the substance of their testimony."); *accord United States v. Naghani*, 252 F. App'x 185, 187 (9th Cir. Oct. 26, 2007) (unpublished) ("Although defense counsel is required to conduct a reasonable

12

investigation into a defendant's case, counsel is not required to interview every witness, particularly where the potential witness's version of events are fairly known to defense counsel.") (citing *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) ("A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel.") (quoting *United States v. Decoster*, 624 F.2d 196, 209 (D.C. Cir. 1976) (en banc))). Here, Petitioner testified he told trial counsel to talk to Horne and Fleming because they could corroborate his story that he did not sell them drugs. Hr'g Tr. [DE-111] at 8. Thus, trial counsel was aware of the testimony these potential witnesses could offer and satisfied his investigative duty by discussing these potential witnesses with Petitioner, as reflected in trial counsel's notes and the hearing testimony of both trial counsel and Petitioner. *See Strickland*, 466 U.S. at 691 ("[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.").

Petitioner also overstates the potential significance of Fleming's testimony. Petitioner's claim that impeachment of Sharpe's testimony by Fleming would have left the government with no credible evidence to tie Petitioner to any quantity of crack cocaine, Pet'r's Mem. [DE-91] at 1-2, is not supported by the evidence where Boston and Blanchard also testified regarding buying crack from Petitioner and seeing Petitioner sell crack. Trial Tr. [DE-79] at 109-12, [DE-80] at 74-80; *see also Watson*, 537 F. App'x at 216 (finding that "Watson and Boston agreed to sell crack cocaine together," "Watson had regular dealings with Blanchard," and there was "ample evidence that Watson, Boston, and others agreed to distribute drugs within a certain area and that they facilitated each other's efforts to that end."); *United States v. Mason*, 481 F. App'x 815, 819 (4th Cir. June 5,

13

2012) (per curiam) (unpublished) (finding debatable claim of denial of a constitutional right where potential witness plainly impeached testimony "critical" to the government's case and "crucial" to satisfying the government's burden of proof). And, it is far from certain that Fleming's testimony would have been persuasive to the jury given Boston's testimony that he sold drugs to Fleming, Trial Tr. [DE-80] at 81, which is consistent with Sharpe's testimony that he and Fleming were dealing together, Fleming bought drugs from Boston until Boston was arrested, and Fleming then turned to Petitioner as his source, *id.* at 119-20. This further supports counsel's strategic decision not to call Fleming or Horne, particularly in light of counsel's concern that further delay could provide an opportunity for others to come forward and put more drug weight on Petitioner. Hr'g Tr. [DE-111] at 36.

Trial counsel, in consultation with his client, made the strategic decision to counter Sharpe's testimony through cross-examination given Sharpe's inconsistent statements, the time constraint, not having contact information for Horne or Fleming, and Petitioner's insistence on proceeding to trial. *Id.* at 40-42. Trial counsel also argued to the jury that they should consider the evidence and witnesses they would not hear, specifically citing the government's failure to call Horne or Fleming to testify. Trial Tr. [DE-79] at 20. Moreover, the veracity of Petitioner's testimony that he urged trial counsel to pursue Horne and Fleming to corroborate his story and testify at trial is called into question by Petitioner's repeated assertions that he did not want to continue his trial. Arraignment & Pretrial Tr. [DE-77] at 12-14; Hr'g Tr. [DE-111] at 9-10. Trial counsel testified credibly that had Petitioner focused on Horne and Fleming, he would have requested a continuance to further investigate them and that he had investigated witnesses in the past when warranted. Hr'g Tr. [DE-111] at 21, 33, 41-42; *see Huffington*, 140 F.3d at 580-81 ("The Supreme Court has recognized that

14

'[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.'") (quoting *Strickland*, 466 U.S. at 691).

Finally, given the jury's verdict, it is apparent that they found Sharpe credible and, therefore, trial counsel reasonably believed that it was unlikely he would have success impeaching Sharpe's testimony altogether through Horne or Fleming at sentencing where a lower preponderance of the evidence standard applies. Hr'g Tr. [DE-111] at 41; Sentencing Tr. [DE-74] at 5. And, trial counsel prevailed on an objection to the PSR asking the court to use the lowest drug weight to which Sharpe testified. Sentencing Tr. [DE-74] at 4-5. Thus, trial counsel's decision not to pursue testimony from Horne or Fleming at sentencing was reasonable. Accordingly, trial counsel's performance was not deficient at trial or sentencing and Petitioner's claims fail under the first prong of *Strickland*.

## IV. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Petitioner's motion [DE-87] be denied, the government's motion [DE-92] be ALLOWED, and that Petitioner's claims be dismissed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **November 14, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **14 days** of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the 31st day of October 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

16

Case 5:11-cr-00330-FL   Document 112   Filed 10/31/16   Page 16 of 16